## JAMES AND OTHERS v. DRAKE.

*BAILEE.—Liability for neglect.*

1. The bailee of a hired slave neglected to have him vaccinated, after it had come to his knowledge that the small pox had broken out among his other slaves; *held,* the proof being that vaccination is a preventive of small pox, that this was ·such gross neglect as, in the event of the slaves death from small pox, would make the bailee liable for his value.

2. SAME. *Previous neglect of Bailor no excuse.*—The fact that the slave was an adult, and that the owner had never had him vaccinated, will not excuse the bailee or change his liability.

3. SUPREME COURT *will not reverse, when.*—When it appears that the Circuit Judge refused to charge the law upon a point which the record does not show to be material.

4. SAME. Presumptions in support of Circuit Court.

5. SAME. *New trial, when refused.* When a witness disclosed affidavit that he was mistaken in certain statements made at the trial, it not appearing that such mis-statements corrected, would, upon a subsequent trial, affect the merits of the case.

6. SAME. *Arrest of judgment. Guardian and Ward.* Where a suit was commenced by a guardian for his ward, and after several years was reduced to judgment in favor of the ward in his proper name, *held,* no ground for arresting judgment. Such an informality is cured by the act of 1852, ch. 157, § § 4 and 5.

7. SAME. *Plea in abatement. Presumption.* If no guardian or next friend continue to interpose, such fact should have been pleaded in abatement before trial on the merits; otherwise it is to be presumed that the ward became of age before judgment.

WRIGHT, J., delivered the opinion of the court:

This is an action on the case instituted by Henry C. Drake, an infant, by his guardian, Richard Hyde, against Thomas G. James and Thomas C. Simpkins, to recover the value of a slave named Bill, the property of the plaintiff. This slave had been hired by the defendents for the year 1847, and used on the farm of the defendant James.

It is stated in one of the counts of the declaration, that

through the negligence and imprudence of the defendants, this slave was exposed to a malignant and contagious disease, known as small pox, then existing and in action on the farm of the defendent, which disease fastened itself upon said slave and killed him in a few days thereafter. The proof shows that the defendant James, was aware for some days, or weeks before the negro Bill was attacked with the small pox, that the disease was in his family and amongst his negroes, but did not have Bill vaccinated or inoculated, and he took the small pox subsequently, and died in 1847, whilst in the defendant's possession. The Circuit Judge, after instructing the jury as to the degree of care and diligence required of the bailee in this species of bailment, stated to them that if the proof showed that vaccination was a sure and probable preventative of the disease, and that the defendants had such notice of its approach, that with reasonable diligence they might have procured the negro to be vaccinated, it was negligence in them not to do it. The counsel for the defendants thereupon requested the Court to charge the jury, that if they should be of opinion that vaccination puts a person in a condition during life to render small pox innoccuous to him, then it was the fault of the owner, that the slave had not been put in that condition by him.

The Court so declined to charge, but told the jury that however the law might be, if the plaintiff had been an adult at the time of the hiring, (but as to which the Court expressed no opinion,) the fact that he and his guardian had failed to vaccinate the negro wonld not discharge the defendants from the consequences of their neglect, if they should believe from the proof, that it would otherwise have been their duty to have done so.

In giving these instructions, and refusing the instruction

asked, the Court committed no error. The defendant James knew for·some days or weeks before the negro was attacked, that the disease was in the family, amongst his negroes, and it was gross neglect in him, not to have had him vaccinated.

He was as much bound to protect the slave from danger, and the taking of the disease, before he was attacked, as in the treatment of him afterwards. Yeatman and Armstead vs. Hart, 6 Hum. 375-8. (1)

The omission of the plaintiff, or his guardian to innoculate the slave anterior to the hiring, furnishes no excause whatever to the defendant. Even where one party is in fault, that will not excuse the other party, if by the exercise of ordinary care, he might still have avoided the injury, notwithstanding the · fault of the first party. Here the defendant's negligence was the immediate cause of the loss, and with the exercise of prudence, they might have prevented it; and the supposed negligence or omission of the plaintiff, or his guardian, bears too remotely upon it, to afford the defendant any ground .of relief.

The Court was also requested to charge the jury, that in a case of small pox which was contagious and deadly in its character, the defendants would not be held to the same diligence as in the case of other diseases, not contagious, and not involving risk to their personal safety by contact.· This instruction was also refused.

(1) Story Bailm. 397 *et seq.* Sir W. Jones Bailm. 66-69, 88; 2 Kent. Com. 586, 587; Yeatman v. Hart, 6 Humph. 375.

McNiell v. Brooks, 1 Yerg. 73; Cain v. Kelly, 4 Humph. 72; Parker v. Thompson, 5 Sneed, 349; Heathcock v. Pennington, 11 Ired. 640; Biles v. Holmes, *Ibid.* 16; Swigert v. Graham, 7 B. Mon. 661.

It refers to the treatment of the patient, after he was attacked with the disease and was no doubt refused because the Circuit Judge considered that he had already sufficiently stated to them, that the contagion and risk of personal danger were elements for their consideration, in estimating the diligence of the defendants..

But if the proposition, itself in the shape in which it was put were free from objection, and such as to demand ordinarily a particular response, yet here the refusal of the Circuit Judge can be no cause of reversal, for the reason that there is not in this record the least evidence of a want of care in the treatment of this slave after he was attacked.(2)   On the contrary, the evidence is that Mr. James remained on his farm during the whole time of the slave's illness, and visited him several times a day.   And besides, the whole evidence is not given, and in suppor of the action of the Court, we must presume that the instructions were not entirely useless in the case.   Neither can we say that the Circuit Judge erred in refusing a new trial upon the affidavit of J. D. James.   He disclosed in this affidavit, that when examined as a witness on the trial of the case, he had stated that he had returned from the South in June 1847, bringing home with him a negro girl named Kitty, and others ; that he afterward had the small pox ; that the girl Kitty some two or three weeks after his return was sent to the house of the defendant to stay, and took, as he supposed, the small pox. That since the trial he had examined his books and papers, and was satisfied he was in New Orleans as late as the 25th of July, 1847, and that he did not reach home before the middle of August, and that he could not have

(2) See Bridges v. May, *supra*, p. 96.

sent the girl Kitty to the defendant before the 1st of September, or perhaps a little later ; and that in these particulars he was mistaken in his testimony on the trial. It does not appear to us from anything in this record that the correction of this mistake is at all material to the merits of the case, and we cannot reverse the Circuit Judge, who heard the whole cause, upon conjecture that he may have acted wrong. (3)

During the progress of the cause the guardian died, and the suit was converted to a judgment in the name of Drake, and it does not appear that he had any other guardian or next friend. For this supposed irregularity, a motion in arrest of judgment was made, which was overruled by the Circuit Court.

In this there is no error. We cannot know but that the minor at the trial in 1859, had arrived at full age, and will presume the fact to be so, as no next friend was interposed or required by the defendant, especially when we consider the suit was instituted in 1850. But if this were not so it was a matter in abatement, and should have been so pleaded, instead of going to trial upon the merits, and is at most a formal objection, and cured by the act of 1852, Chapter 157, Sections 4 and 5.

*Affirm the judgment.*

(2)   See Harris v. Burris, *supra,* p. 137 Cate v. Little, *supra,* p. 63.