MARGUERITE C. KELLY vs. CITY OF BOSTON.

Suffolk.    December 11, 1964. — January 28, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Taxation*, Real estate tax: foreclosure of tax title, sale of foreclosed land.
    *Municipal Corporations*, Tax title property.

After a taking of land for nonpayment of taxes and foreclosure of the
    tax title by a decree of the Land Court under G. L. c. 60, § 69, the
    former owner of the land was not entitled to any part of the proceeds
    of a sale of the land by the municipality for an amount reflecting its
    fair market value and substantially in excess of the tax liabilities in-
    cluded in the tax title account.

BILL IN EQUITY filed in the Superior Court on March 5,
1963.

The suit was reported by *Taveira, J.*

*John H. Fitzgerald* for the plaintiff.

*William H. Kerr* (*Mario Misci,* Assistant Corporation
Counsel, with him) for the defendant.

WILKINS, C.J.    This proceeding for declaratory relief,
which was heard on the bill of complaint, the answer, and a
stipulation of counsel, has been reported without decision
by a justice of the Superior Court.    G. L. (Ter. Ed.) c. 214,
§ 31.

Certain land in the West Roxbury district of Boston was
owned in fact and of record by the plaintiff from June 16,
1950, to the entry of a decree of foreclosure in the Land
Court on November 8, 1960.    On June 4, 1952, by instru-
ments of taking duly recorded on June 18, 1952, the city
collector under G. L. c. 60, §§ 53,[1] 54,[2] and 55,[3] took the land

---

[1] Section 53 (as amended through St. 1933, c. 164, § 3) reads in part, "If a
tax on land is not paid within fourteen days after demand therefor and re-
mains unpaid at the date of taking, the collector may take such land for the
. . . [city] . . . ."

[2] Section 54 (as amended through St. 1938, c. 339, § 2) provides for the
form, contents, and recording of the instrument of taking.    It further pro-
vides, "Title to the land so taken shall thereupon vest in the . . . [city],
subject to the right of redemption.    Such title shall, until redemption or until
the right of redemption is foreclosed as hereinafter provided, be held as
security for the repayment of said taxes with all intervening costs, terms
imposed for redemption and charges, with interest thereon . . . ."

[3] Section 55 (as amended through St. 1933, c. 325, § 8) allows the collector's
statutory fees to be added to the tax, and the cost of recording the instrument
of taking if it was recorded within sixty days of the taking and delivered to
the city treasurer.

for the city for the nonpayment of 1950 real estate taxes, and a tax title account was set up on the city's books. On August 9, 1954, pursuant to G. L. c. 60, § 65 (as amended through St. 1938, c. 305),[1] the city filed a petition in the Land Court upon which, under G. L. c. 60, § 69 (as amended through St. 1945, c. 226, § 1),[2] a decree was entered on November 8, 1960, forever barring all rights to redeem from the tax taking. At that time the amount required to redeem was $9,825.80. On September 11, 1962, under St. 1943, c. 434,[3] as amended, the city sold the land for $33,000, which was the fair market value also on November 8, 1960.

The issue, as stated by the plaintiff, is whether after the foreclosure sale the plaintiff should receive from the collector the surplus remaining over and above taxes, interest, costs, and other assessments committed to the collector. The issue, as stated by the defendant, is whether the plaintiff is entitled either to the amount by which the fair market value of a tract on the date of the foreclosure decree exceeds the tax liabilities then reflected in the tax title account or to the amount by which the proceeds of the sale after foreclosure exceed the aggregate of such liabilities and a sum in lieu of what the intervening taxes would have been.

The issue, however stated, has not been the subject of any decision of this court under our statutes in their present form. On the other hand, the reverse situation was presented in *Boston* v. *Gordon,* 342 Mass. 586, where it was held (p. 593) that "foreclosure of the tax title to the locus operated to discharge the liabilities then reflected in the tax

---

[1] Section 65, as amended, provides in part, "After two years from a sale or taking of land for taxes . . . whoever then holds the title thereby acquired may bring a petition in the land court for the foreclosure of all rights of redemption thereunder."

[2] Section 69, as amended, provides in part, "If a default is entered under section sixty-seven, or if redemption is not made within the time and upon the terms fixed by the court under the preceding section, or if at the time fixed for the hearing the person claiming the right to redeem does not appear to urge his claim, or if upon hearing the court determines that the facts shown do not entitle him to redeem, a decree shall be entered which shall forever bar all rights of redemption."

[3] This is entitled "An Act establishing in the city of Boston the board of real estate commissioners, and setting forth its powers and duties."

title account only to the extent of the fair market value of the locus on the date of the foreclosure decree." In that case the city was permitted to recover a deficiency from the landowner.

The plaintiff places reliance on G. L. c. 60, § 43 (as amended through St. 1935, c. 236),[1] which, while most explicit as to the order of the application of the proceeds of a sale to the payment of the several items of taxes, assessments, interest, and the like, concededly is silent as to the disposal of any surplus. She argues that in equity and good conscience such surplus belongs to the taxpayer, and emphasis is laid upon earlier statutes which did so award any surplus.

The defendant denies the materiality of c. 60, § 43, and contends that it deals "solely with the allocation of redemption and sale moneys among the various items of taxes, assessments, rates and charges reflected in the tax title account."

We must agree with the defendant's contention. In 1862 municipalities were authorized to sell land which they had purchased at a tax sale and which had not been redeemed within the specified period of time. St. 1862, c. 183, § 7. After deduction for the expenses of the sale and the amount paid at the tax sale with ten per cent interest per annum and all intervening taxes and necessary charges, the moneys received at this sale inured to the prior owner of the property. These provisions were made applicable to land taken by a municipality. St. 1878, c. 266, § 10. The Legislature continued to provide for the surplus from the sale of unredeemed land until 1915. See Pub. Sts. c. 12, § 58; St. 1888,

---

[1] After providing for a sale at public auction for nonpayment "of the taxes and interest, if any, and necessary intervening charges," § 43 contains this language: "If the municipality . . . takes the land in such case, the proceeds received . . . upon a sale following foreclosure of the right of redemption shall be applied first to taxes assessed on account of the municipality under chapter fifty-nine, including interest thereon, and all costs, charges and terms of redemption in any way resulting from such sale . . ., second, to any district taxes, including interest thereon, in the order in which they were committed to the collector, and the balance to other assessments or portions thereof, rates and charges, including interest thereon, in the order in which they were committed to the collector."

c. 390, § 66; R. L. c. 13, § 67; St. 1909, c. 490, II, § 68. In 1915 the Legislature enacted the present system of foreclosing the right of redemption in the Land Court with notice of the proceeding being sent to all interested parties. St. 1915, c. 237, §§ 3–15. Compare G. L. c. 60, §§ 64–77B, as amended. After foreclosure of the rights of redemption under a tax title, the land was to be held and disposed of like any land belonging to the municipality. St. 1915, c. 237, § 18. Compare G. L. c. 60, § 77 (as amended through St. 1953, c. 654, § 37). Foreclosure in the Land Court replaced the method whereby the right of redemption after a tax sale or taking was foreclosed by mere expiration of a certain period of time without notice to the parties. See Nichols, Taxation in Massachusetts (3d ed.) 386–387, 422; Report of the Special Commission Appointed to Consider and Recommend Changes in the Laws Relative to Liens, Mortgages and Tax Titles, 1915 House Doc. No. 1600, pp. 17–22. The surplus provision in St. 1909, c. 490, II, § 68, was amended to apply only to land taken or purchased by a muncipality prior to July 1, 1915, the effective date of St. 1915, c. 237. See St. 1915, c. 237, § 20.

We think it is clear from the above history of the tax statutes that the Legislature intended the surplus from a sale of land taken for nonpayment of taxes, on which the right of redemption has been foreclosed in the Land Court, to belong to the municipality. Our conclusion is supported by the Legislature's 1941 amendment of G. L. c. 60, § 79, which permits the sale without foreclosure of lands of low value which have been taken or purchased at tax sales by a municipality. By St. 1941, c. 594, § 1, the Legislature provided that any surplus from such a sale should be deposited with the municipality's treasurer to be paid to the person thereto entitled if demanded within five years. No such provision was made for lands on which the right of redemption was foreclosed in the Land Court.

Section 43 of c. 60 provides no support for the plaintiff's contention. Statute 1935, c. 236, which inserted the sentence setting forth the order of the application of the pro-

ceeds of the sale after the right of redemption has been foreclosed, was based upon a recommendation of the Commissioner of Corporations and Taxation. Nothing in his report suggests that he or the Legislature intended that the proceeds from the sale would be returned to the prior owner of the property after the various liens had been satisfied. See 1935 House Doc. No. 10, pp. 5–6.

Manifestly on any theory of "equity and good conscience" a municipality has no power to pay out money whenever there may be a surplus after a sale of real estate following foreclosure of a tax title. Such disbursements without statutory authority would be wholly voluntary. Owing to the somewhat nebulous basis of such a claim the assertion of the supposed right would be subject to no limitation of time. It might be in the indefinite future. Also the supposed right conceivably would arise immediately upon foreclosure whenever the fair market value of the real estate either shows, or can by testimony be made to show, a surplus on paper. There would be no fund from which the amount could be withdrawn. If there should be a remedy for someone in the plaintiff's position, the matter rests in the legislative domain.

A final decree is to enter declaring that the plaintiff is entitled to none of the so called surplus.

*So ordered.*