**CITY OF AUBURN**

v.

Samuel **MANDARELLI.**

Supreme Judicial Court of Maine.

May 15, 1974.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

Having ostensibly acquired title to a certain parcel of real estate on December 23, 1970 by virtue of 36 M.R.S.A., §§ 942 and 943 which, in pertinent part, state that

> "[i]f the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired,"

the City of Auburn, the plaintiff taxing municipality, on August 26, 1971 brought action against the defendant, pursuant to 36 M.R.S.A., § 946,[1] to establish and confirm its title to the premises. The Superior Court entered judgment for the plaintiff from which the defendant appeals. We deny the appeal.

The case was submitted to the Court below on a stipulation that the stated evidentiary matter "shall be considered as *all* of the evidence in the case for the purpose of adjudication of the issues by the court as fully as if introduced through testimony and documentation." (Emphasis supplied.) Summarizing the parties' agreement, we are concerned with the assessment of a 1968 municipal tax in the amount of $399.-00 against the land and buildings of one Katherine Mandarelli situated in the City of Auburn. The tax was committed for collection on August 1, 1968. Its non-payment caused a delinquent letter to be sent to the taxpayer on January 2, 1969. The statutory "ten-days notice" under 36 M.R.S.A., § 942 was sent to the taxpayer and

Linnell, Choate & Webber by G. Curtis Webber, Jon S. Oxman, Auburn, for plaintiff.

Wilson, Steinfeld, Murrell & Lane by Henry Steinfeld, Thomas P. Wilson, Portland, for defendant.

1. 36 M.R.S.A., § 946(2) "Decree; effect. The plaintiff in such action shall pray the court to establish and confirm its title to the premises described in the complaint as against all the defendants named or described therein, and if upon hearing the court shall find the plaintiff's title so to be good it shall make and enter its decree accordingly, which decree when recorded in the registry of deeds for the county or district where the real estate lies shall have the effect of a deed of quitclaim of the premises involved in the action from all the defendants named or described therein to the plaintiff."

owner of record, Katherine Mandarelli, on June 6, 1969 and was received by her the next day, as evidenced by her signed receipt thereof. On June 23, 1969, a tax lien certificate was recorded in the Androscoggin County Registry of Deeds in compliance with 36 M.R.S.A., § 942. The defendant concedes that the 1968 tax assessed against the Mandarelli property remained unpaid on December 23, 1970 when the eighteen-months statutory period of redemption expired. The stipulation of facts carried the further information that Katherine Mandarelli conveyed her interest in the property to the defendant by deed dated August 18, 1970 and recorded in the Androscoggin Registry of Deeds on February 18, 1971. Additionally, the parties agreed the assessed value of said real estate was $13,300.00 in 1968 and $13,520.00 in 1970, but, for purposes of sale from Katherine Mandarelli to Samuel Mandarelli, the property was valued at $27,000.00.

The defendant acknowledges full compliance with the requirements of 36 M.R.S.A., § 942.[2] He contends, however, that forfeiture of the property pursuant to the statute deprives him of procedural and substantive due process of law, and, where the value of the property, as in the instant case, far exceeds the amount of the tax due, it constitutes a taking without just compensation in violation of the Fifth, Fourteenth Amendments to the Constitution of the United States.

I

PROCEDURAL DUE PROCESS

The defendant seems to base his due process argument on the premise that the

only notice which will satisfy the requirements of due process of law within the Fourteenth Amendment to the Constitution of the United States is notice obtained by personal service and that no other form of substituted service such as leaving the notice at the last known place of abode or by certified mail will qualify, except where it is shown that personal service cannot be made of necessity or for other good reason. In this, he is mistaken.

Initially, we recognize the tenuous position of the defendant in point of standing to question the constitutional deficiency of the statutory ten-days notice which under the statute the tax collector "may * * * give to the person against whom said tax is assessed, or leave at his last and usual place of abode, or send by registered mail to his last known address." Indeed, at the time notice was given to Katherine Mandarelli, the record owner, the defendant was a complete stranger to, and had no interest in, the property. His rights in the premises originated after the recording of the tax lien certificate in the registry of deeds, a fact which a title search before purchase would have readily disclosed.

Furthermore, from the agreed statement of facts, it is unclear whether the defendant acquired his alleged title to the property prior to the expiration of the period of redemption, i. e. on August 18, 1970 the date upon which the Mandarelli deed purported to have been executed, or subsequently thereto, i. e. on February 18, 1971 the date when the deed was recorded in the registry of deeds. The stipulation is silent respecting delivery of the deed.

2. The parties' stipulation of facts does not disclose specifically that a true copy of the tax lien certificate, at the time of its recording in the registry of deeds, was filed with the municipal treasurer as required by 36 M.R.S.A., § 942. It does, however, assert that "the statutory assessment process having been followed, said taxes above described not having been paid, and 18 months having expired after recording of said tax lien certificate, the above described property, under the provisions of Title 36, M.R.S.A., § 942 et seq., became the property of the plaintiff."

This specific endorsement by the defendant, supported by his failure affirmatively to raise the issue or dispute the point, conclusionally suggests that the reference filing was actually complied with, especially in the light of 36 M.R.S.A., § 943 which accords the tax lien mortgage prima facie evidence status, not only respecting "the regularity and validity of all proceedings with reference to the acquisition of title by such tax lien mortgage and the foreclosure thereof," but also as to the title itself of the municipality to the real estate involved.

A deed's appearance upon the record does not per se operate as a delivery nor supersede the necessity of proof of delivery. Patterson v. Snell, 1877, 67 Me. 559; Jones v. Roberts, 1876, 65 Me. 273. A deed takes effect from and by delivery, and not from its date. Egery v. Woodard, 1868, 56 Me. 45.

Notwithstanding the absence of an affirmative statement concerning the exact time of delivery of the deed in the agreement of the parties, however, the Court takes notice of the pleadings which positively settle the issue to the effect that delivery was on August 18, 1970 prior to the expiration of the period of redemption. The complaint so alleged and the answer admitted it.

Nevertheless, we have in mind that, in relation to the enforcement procedures provided by the tax lien law respecting real estate, this Court has applied the principle that there must be strict compliance with statutory requirements to divest property owners of their titles for non-payment of taxes, and failure strictly to follow the statutory delineated ritual will destroy the validity of the tax lien certificate. Roberts v. Moulton, 1909, 106 Me. 174, 76 A. 283; Inhabitants of the Town of Warren v. Norwood, 1941, 138 Me. 180, 24 A.2d 229; Scavone v. Davis, 1946, 142 Me. 45, 45 A.2d 787; Arsenault v. Inhabitants of Town of Roxbury, 1971, Me., 275 A.2d 598. Since the plaintiff's ostensible title would be a nullity, if, as contended by the defendant, the notice requirements of the statute were constitutionally insufficient to satisfy the due-process-of-law strictures, the defendant has standing to question the same in these proceedings.

It is a well established general principle of law that the constitutionality of legislative action can be attacked by persons whose rights are injuriously affected by the operation of the legislation. Look v. State, Me., 1970, 267 A.2d 907;

Inhabitants of Canton v. Livermore Falls Trust Company, 1939, 136 Me. 103, 3 A.2d 429.

The defendant's present arguments were considered and rejected by this Court in the case of Inhabitants of Town of Warren v. Norwood, supra. There, the statutory notice was left at the home of the taxpayer-owner, while in the instant case the notice was given to, and received by, Mrs. Mandarelli as her signature attested to such facts.

In *Town of Warren,* this Court, in considering the constitutionality of the same tax lien law involved in the present case, recognized that the legislative branch of government under our tripartite system, even in the field of tax assessment and collection, is subject to the restrictions placed upon its powers and authority by the Constitution of this State and, further, that any state legislative enactment to be valid must, in the first place, conform to the Constitution of the United States.

In Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, the United States Supreme Court said:

"The Constitution of course obliges this Court to give full recognition to the taxing powers and to measures reasonably incidental to their exercise. But we are equally obliged to give full effect to the constitutional restrictions which attend the exercise of those powers."

Our Court in *Town of Warren* further pointed out that he who questions the validity of administrative acts on constitutional grounds has the burden of showing that the particular enactment exceeds legislative power and that he is actually deprived of a constitutional right by the act of which he complains.

Also, this Court there said that the notice required by the tax lien law was more than sufficient to meet the requirements of due process in the field of taxation to which the legislation related and that the

statutory remedies which allowed the taxpayer judicial review of the valuation placed upon his property and permitted an action for the recovery of money paid on any tax assessed against his property for an improper purpose with twenty-five per cent interest and costs, plus damages sustained by reason thereof, would seem to represent full assurance that the machinery for the enforcement of tax liens would be operated within constitutional bounds and, to that extent, served to meet fully the requirements of due process.

This Court further concluded:

"The tax title derived by compliance with its [the] requirements [of the statute] can be no better than the tax assessment on which it is based; and if that assessment is defective, no title can accrue by going through the formality of recording a tax lien certificate. The process is available only as to property properly described and necessarily only if a lien has attached by proper assessment. Notice to the taxpayer is required both by delivery in hand, or at his last and usual place of abode, or by registered mail, and by record in the title registry office, and payment of the tax, with interest and costs, at any time during an 18-month waiting period, after record, assures the discharge of the lien. These 'proceedings', with the protection afforded to the taxpayer by statute to protect himself against the payment of more than his due equivalence of the total tax levy and to test the propriety of each and every item in the municipal appropriations, seem to this court to represent ample protection of all his constitutional rights."

The defendant questions the present viability of our decision in *Town of Warren* in light of the recent line of cases represented by Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556. In *Fuentes* the Supreme Court held that procedural due process was lacking in prejudgment replevin statutes which operate to deprive individuals of their possessory rights in property without prior notice and opportunity for a hearing.

The rationale underlying the *Fuentes* concept of due process may be better grasped by quoting the Court's language:

"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is *to protect* his use and possession of property *from arbitrary encroachment*—to minimize substantively unfair or mistaken deprivations of property, *a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party.* So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." (Emphasis added.)

The right to enjoy private property is necessarily subject to governmental interference in the form of taxation. Taxation is the life-maintaining process to government itself which in turn makes the enjoyment of private property a reality. Taxation is recognized as a sovereign right. As such it is an attribute of sovereignty. It is essential to the very existence of government. And, as stated in Morris et al. Pet'rs. v. Goss, 1951, 147 Me. 89, at 103, 83 A.2d 556, at 563–564:

"The exercise of the power to tax necessarily involves two steps, both of which are within the sole province of the Legislature: first, a determination of the nature of the tax to be imposed; and, second, *the effective imposition of the tax in such a manner as to insure its collection and availability to the State*

*for the purposes for which it is raised.* The preservation of the public peace, health and safety is indispensably necessary in and by any government worthy of the name. The essential needs of the State government are those things which are indispensably necessary to enable the State to preserve the public peace, health or safety. Sufficient revenue therefor is absolutely indispensable to the preservation of the public peace, health or safety." (Emphasis supplied.)

In *Fuentes,* the Supreme Court allowed for situations justifying postponement of notice and opportunity for a hearing and categorized summary seizures of property to collect the internal revenue of the United States as without the ambit of its ruling, citing Phillips v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 51 S. Ct. 608, 75 L.Ed. 1289.

The State's interest in the speedy collection of tax revenues can hardly be equated to the State's concern in protecting the security interests of creditors, and, for that reason, cases such as *Fuentes* passing on the constitutionality of laws authorizing seizure of chattels in a person's possession under a writ of replevin issued prior to hearing and judgment lack relevancy. Dow v. State, 1973, 46 Mich.App. 101, 207 N.W.2d 441.

Upon reexamination of the issue of the constitutionality of our tax lien law, we reaffirm our holding in Town of Warren v. Norwood in all its aspects.

The Legislature has ordained that a lien attaches on real estate to secure the payment of all taxes legally assessed thereon and that such lien shall continue in force until the taxes are paid or until said lien is otherwise terminated by law, provided that in the inventory and valuation upon which the assessment is made there shall be a description of the real estate taxed sufficiently accurate to identify it. 36 M.R.S.A., § 552.

To enforce said lien via the tax lien certificate method, the tax collector must, after the expiration of 8 months and within one year after the date of the original commitment of the tax, give to the person against whom said tax is assessed, or leave at his last and usual place of abode, or send by registered mail to his last known address, a notice in writing signed by said tax collector stating the amount of such tax, describing the real estate on which the tax is assessed, *alleging that a lien is claimed on said real estate to secure the payment of the tax, and demanding the payment of said tax within 10 days after service or mailing of such notice* with $1 for said tax collector for making the demand. After the expiration of said 10 days and within 10 days thereafter, the tax collector must record in the registry of deeds of the county or registry district where said real estate is situated a tax lien certificate signed by said tax collector *setting forth* the amount of such tax, a description of the real estate on which the tax is assessed and *an allegation that a lien is claimed on said real estate to secure the payment of said tax, that a demand for payment of said tax has been made in accordance with this section, and that said tax remains unpaid.* Also, the tax collector must, at the time of the recording of the tax lien certificate in the registry of deeds, in all cases file with the municipal treasurer a true copy of the tax lien certificate. 36 M.R.S.A., § 942.

The filing of the tax lien certificate in the registry of deeds, by legislative mandate, creates a tax lien mortgage on said real estate to the municipality in which the real estate is situated having priority over all other mortgages, liens, attachments and encumbrances of any nature, and gives to the municipality all the rights usually incident to a mortgagee, *"except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired."*

The statute further provides that the filing of the tax lien certificate in the registry of deeds shall be sufficient notice of the existence of the tax lien mortgage and,

in the event the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, *the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.*

In the recent case of Martel v. Bearce, 1973, Me., 311 A.2d 540, we said of the taxpayer's interest in real estate against which a tax lien mortgage certificate had been filed that

> "The only interest in the real estate, except the right to possession, remaining in the owner is the right to redeem the property upon paying the taxes due plus interest and costs. The passage of eighteen months' time *during which the taxes remain unpaid* places complete record title in the municipality. * * * The former owner's right of redemption —and, in fact, his title—are extinguished. As in the case of the common law mortgagor, there remains only the contingency that he may be able (if he chooses to try) to demonstrate in a legal action a failure in the procedure by which his title was lost." (Emphasis ours.)

The defendant, in the instant action by the municipality to establish and confirm its title to the premises under 36 M.R.S.A., § 946, in which action he was properly served, had the opportunity to defeat the city's title by alleging in his answer any specific "invalidity or defect" in the foreclosure proceedings including the assessment of the tax or that the tax had been paid, and establishing such "invalidity or defect" as a defense to the action.

Notice and opportunity for hearing are of the essence of due process of law. Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; Randall v. Patch, 1919, 118 Me. 303, 108 A. 97; Town of Warren v. Norwood, supra; Kramer v. Inhabitants of the Town of Linneus, 1949, 144 Me. 239, 67 A.2d 536.

The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect. What is due process in specific procedures affecting property interests must be determined by taking into account the purposes of the procedures themselves and their effect upon the rights asserted *and all other circumstances which may render* the devised process appropriate to the nature of the case. See, Anderson National Bank v. Luckett, 1944, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692.

The power of the State to collect revenue and to make all laws which are necessary and proper for carrying that power into effect through the taxation process is not circumscribed by the Constitution to the same extent as litigants are in judicial proceedings. Due process of law in the field of taxation does not require the same kind of notice as is required in the case of judicial actions or even in proceedings for taking private property under the power of eminent domain. The very existence of government necessitates that the tax collection process be not subject to the delays attendant upon formal judicial proceedings. King v. Mullins, 1898, 171 U.S. 404, 18 S.Ct. 925, 43 L.Ed. 214.

In Dow v. State, supra, the Michigan Court said:

> "Where proceedings involve the 'regular, annual property tax which the owners must anticipate and pay, knowing the consequences of default,' requirements of notice can be more relaxed than in proceedings which could not have been anticipated by interested parties."

This Court in *Town of Warren* aptly stated the generally recognized rule that "legislation designed to speed and secure tax collections is a thing apart and that an entirely different and lesser test of due

process is to be applied in that limited field as distinguished from other laws of general application."

When an owner of real estate has allowed the taxes assessed thereon to remain unpaid and caused the tax collector, after due notice, to foreclose the tax lien mortgage in compliance with the statutory requirements, the Legislature has the constitutional power to cut off the interest of the delinquent owner upon his failure to redeem within the legislatively provided period of redemption.

The Legislature in carrying out its property tax program has a right to expect from all owners of real estate that they will perform their citizenship duties amongst which is the duty to pay taxes properly assessed on their property for a lawful purpose.

▇▇▇ The statute itself gives warning to the taxpayer that if he does not pay his taxes he may lose his land. The owner is presumed to know that his land was taxable, that in due course it would be assessed and placed on the tax rolls, that it is his duty to pay his taxes on time, that if he fails to do so and receives from the tax collector the ten days notice to the effect his taxes on a described parcel of real estate are in arrears and that a lien is claimed thereon, the tax collector within 10 days after the expiration of the 10 days request-for-payment notice will record in the registry of deeds a tax lien certificate against his property which is tantamount to a mortgage lien, and that his failure to pay the taxes, interest and costs within eighteen months thereafter will automatically divest him of his title to the property. The taxpayer has a duty to learn what is being done to enforce the payment of taxes against his property.

▇▇▇ As stated in *Town of Warren,* a delinquent taxpayer should not be entitled to a hearing before foreclosure of his title, where he has not contested the amount of the tax through the available abatement process and where he is given a right of action for reimbursement and damages in the case of payment of any tax assessed for an improper purpose, and, we may add, where he may contest the tax title either in an independent action of his own or in defense of the complaint to establish the validity of the tax title.

▇▇▇ Mrs. Mandarelli, the owner of record at the time demand for payment was made, received personal notice that her taxes were in arrears and that a lien was claimed on her real estate to secure the payment of the taxes. By express provision of 36 M.R.S.A., § 943, the filing of the tax lien certificate in the registry of deeds was sufficient notice of the existence of the tax lien mortgage. We held in Avco Delta Financial Corp. v. Town of Whitefield, 1972, Me., 295 A.2d 921, that the usual "notice" principles by which the real property recording system operates are incorporated into the tax-lien-mortgage-foreclosure mechanism for the enforcement of property tax collections by municipalities, and thus Mrs. Mandarelli had notice that the eighteen months' period of redemption had started to run against her property. The defendant who purchased the property after the recording of the tax lien mortgage is charged with notice thereof and his rights rise no higher than those of the person from whom he acquired the property.

▇▇▇ We reaffirm the holding of Town of Warren v. Norwood to the effect that the tax lien certificate statute for enforcement of municipal tax collections does not violate procedural due process.

II

SUBSTANTIVE DUE PROCESS

▇▇▇ The defendant urges on this Court that, by reason of the city's retention of property far exceeding in value the amount of the tax liabilities, he is deprived of property without due process of law, equat-

ing the municipal action to a taking without just compensation. He argues that governmental fair play, imbedded in constitutional substantive due process, requires that the city either sell the property and turn over to him the amount in excess of the tax indebtedness, or have the property appraised and refund to him the sum by which the appraised value exceeds the money owed.

He cites in support thereof the cases of United States v. Lawton, 1884, 110 U.S. 146, 3 S.Ct. 545, 28 L.Ed. 100 and Bogie v. Town of Barnet, 1970, 129 Vt. 46, 270 A.2d 898, in both of which the Court held the surplus refundable to the owner. Both cases are distinguishable, since in each case the Court decided that a proper construction of the pertinent statutory tax legislation mandated such result.

In Nelson v. City of New York, 1956, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171, the Supreme Court, after noting that the *Lawton* decision was based entirely on the construction of the tax statutes involved and was "without constitutional overtones," held that the retention of the surplus by the taxing authority was not violative of constitutional rights, where the city had taken adequate steps to notify the landowner and the latter failed to act seasonably. In *Nelson*, the Court had first considered and rejected arguments that the statute violated procedural due process in that it required only notice by publication and by mailing a copy of the published notice to the last known address of the owner.

The Supreme Court has more recently affirmed similar holdings of federal courts. See, Balthazar v. Mari, Ltd., 1969, N.D.Ill., 301 F.Supp. 103, aff'd per curiam, 396 U.S. 114, 90 S.Ct. 397, 24 L.Ed.2d 307; Catoor v. Blair, 1973, N.D.Ill., 358 F.Supp. 815, aff'd per curiam, 414 U.S. 990, 94 S.Ct. 345, 38 L.Ed.2d 231.

III

UNJUST ENRICHMENT

In Balthazar v. Mari, Ltd., supra, the Court said that

"[i]n the rare case when an owner fails to redeem, however, the purchaser may obtain the property for a fraction of its market value, thus gaining as a windfall all 'surplus value' which exceeds the land's tax and interest liabilities."

The defendant, on the other hand, contends that the Court should impose a constructive trust on the excess value and apply the equitable doctrine of unjust enrichment. Unjust enrichment arises where there is a receipt by one person from another of a benefit, the retention of which would be unjust.

This Court recognized, in Pendleton v. Sard, 1972, Me., 297 A.2d 889, that the Legislature, motivated by its own concept of "unconscionable and unjust enrichment," may arbitrarily eliminate certain equities which might otherwise be available to the owner, even in the field of contracts.

To bring a case within the scope of the equitable doctrine of unjust enrichment, there must be some specific legal principle or situation which equity has established or recognized. The retention of the property must be in violation of a duty that the law imposes. See, Anderson v. Anderson, 1942, 155 Kan. 69, 123 P.2d 315; Diaz v. The S. S. Seathunder, 1961, 191 F.Supp. 807, at 823.

In American University v. Forbes, 1936, 88 N.H. 17, 183 A. 860, the New Hampshire Court in an analogous situation denied the application of unjust enrichment in the following manner:

"By statutory law the plaintiff as a creditor was entitled to have its claim paid from the fund if it duly presented the claim. The time for presentation fixed by the statute expiring, the plain-

tiff's interest in the fund was barred, and it became the defendant's property freed and discharged of its subjection to meet the plaintiff's claim. The defendant received that which rightly and justly was his. *The limitation of time for presenting the claim being by statutory prescription, the courts may not indirectly overcome it through declaring a rule of liability which would virtually amend the statute.*

\*    \*    \*    \*    \*    \*

Under the doctrine of unjust enrichment, a defendant has something of value at the plaintiff's expense under circumstances which impose a legal duty of restitution. Here the defendant has no such duty. He received property out of which the plaintiff, through noncompliance with the statute, had lost its right to have its claim paid. No duty of restitution could thereafter arise, since the plaintiff was deprived of nothing due it. Nothing was taken away from it which belonged to it. It had some rights which it omitted to exercise. *Although the failure was due to misfortune, the misfortune was not chargeable to the defendant.*" (Emphasis supplied.)

■ In *Town of Warren,* this Court recognized the clear legislative intent to effect an automatic loss of title to property upon non-payment of taxes and noncompliance with the statutory terms for redemption:

"We hold that there is no requirement in the fundamental law, either of this State or of the United States, which prohibits legislative action establishing a policy that the taxpayer shall lose his entire property by failure to pay all taxes properly assessed thereon, provided, as is the fact under the law in question, that adequate provision is made to give the taxpayer opportunity for redemption, and that the language used by the Legislature in the particular act shows that such was clearly the legislative intention."

Thus, upon the expiration of the period of redemption the defendant lost all rights which he might otherwise have had in the property. No duty arose in the municipality to restore to the defendant the windfall which the city reaped from the taxpayer's and the defendant's negligent noncompliance with the statutory prerequisites for the avoidance of a forfeiture.

■ In the absence of contrary provision by statute or constitution, a municipality's title to property acquired under the tax-lien-mortgage-foreclosure statute is absolute, and the city or town has no power to part with, nor duty to account for, any surplus value on any theory of "equity and good conscience." Kelly v. City of Boston, 1965, 348 Mass. 385, 204 N.E.2d 123; Oosterwyk v. County of Milwaukee, 1966, 31 Wis.2d 513, 143 N.W.2d 497; Spurgias v. Morrissette, 1969, 109 N.H. 275, 249 A.2d 685.

Our tax-lien-mortgage-foreclosure statute provides for notice within the strictures of constitutional due process and allows a substantial period of redemption to protect even the most unwary property owner. The taxpayer who finds it difficult to meet his tax burden for lack of ready cash may seek relief through access to any number of lending agencies or, if unsuccessful, may convey his property subject to the tax lien. In the instant case, the defendant, after his purchase of the property, could have redeemed the property and prevented a forfeiture by simply paying the unpaid taxes, interest and costs prior to the expiration of the period of redemption. The record discloses a complete failure on the part of the defendant to exercise that reasonable diligence which the reasonably prudent purchaser would have displayed in the purchase of such valued property as was here involved. While we may sympathize with persons who suffer forfeitures under the statute, we are not free to invalidate an otherwise constitutional practice in order to avoid occasional hardships.

■ Amelioration of the oppressiveness of this statute must be made, if at all, by the Legislature, not the courts. Balthazar v. Mari, Ltd., supra; Catoor v. Blair, 1973, N.D.Ill., 358 F.Supp. 815, aff'd per curiam, 414 U.S. 990, 94 S.Ct. 345, 38 L.Ed.2d 231; Kelly v. City of Boston, supra; Nelson v. City of New York, 1956, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2d 171, (where the Supreme Court allowed a forfeiture of property valued at $52,000 because of unpaid water charges in the amount of $887 to stand against the claim that the statute deprived the owner of his property without due process of law).[3]

The entry will be

Appeal denied.

All Justices concurring.

WEBBER and POMEROY, JJ., did not sit.

3. Although not applicable to the present case, the following amendment of 36 M.R.S.A. § 943 was enacted by the One Hundred and Sixth Legislature to further lessen the chance of a forfeiture:

P.L.1973, c. 368. "The municipal treasurer shall notify the party named on said tax lien mortgage not more than 45 days nor less than 30 days previous to the foreclosing date of the said tax lien mortgage, in writing by registered or certified mail, of the impending automatic foreclosure, indicating within the notice the exact date of foreclosure. In the event the notice provided in this section has not been given, the party named on said tax lien mortgage shall have the right to redeem said real estate mortgage within 30 days after the said notice."