SUPERIOR COURT 
 
 ASHLEY M. MILLS vs. CITY OF SPRINGFIELD and another [1]

 
 Docket:
 2379CV00545
 
 
 Dates:
 April 18, 2024
 
 
 Present:
 MICHAEL K. CALLAN
 
 
 County:
 HAMPDEN
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS
 
 

             On October 11, 2023, the plaintiff, Ashley M. Mills ("Ms. Mills"), filed an action in the Supreme Judicial Court seeking injunctive and declaratory relief in connection with a tax foreclosure action pending in the Land Court, which action concerns Ms. Mills' home. The complaint seeks injunctive relief and a declaration, · inter alia, that "the practice of retaining owners' surplus equity when real property is taken pursuant to G.L. c. 60 to satisfy debts to municipalities violates the Takings Clause of Article 10 of the Massachusetts Declaration of Rights" and of the Fifth Amendment to the United States Constitution. The Supreme Judicial Court transferred the case to this Court for entry and disposition. Ms. Mills has
 
--------------------------------------------
 
[1] Stephen Lonergan, Collector-Treasurer of the City of Springfield, Massachusetts, in his official and individual capacities.
 
                                                            -1-
 
complied with the notice requirements of G.L. c. 231A § 8.
            Before the Court are Ms. Mills' Motion for Summary Judgment (#21) and the defendants' Motion for Judgment on the Pleadings (#23). The Court heard oral argument on March 19, 2024.       At that time the parties agreed, on the record, that there were no triable issues of fact and that the case was postured for a decision on the merits.
LEGAL AND FACTUAL BACKGROUND
            The following is a summary of the relevant facts as well as applicable law.[2] Ms. Mills owns a single-family home located at 44 Felicia Street in Springfield (the "home"), for which property taxes in the amount of $1,636.70 went unpaid in 2016.[3] When "taxes are assessed on a property, a lien arises automatically, giving the municipality a security interest in the property." Tallage Lincoln, LLC, 485 Mass. at 461; G.L. c. 60, § 37.
            If the owner fails to pay overdue taxes within fourteen days of a formal demand for payment, "the collector can take action to preserve, or 'perfect,' the lien by ... executing a tax taking." Id., citing G.L. c. 60, §§ 53-54. A
 
--------------------------------------------
 
[2] For explanation of relevant law, the Court relies on discussion of the "archaic and arcane process" of tax lien foreclosure appearing in Tallage Lincoln, LLC v. Williams, 485 Mass. 449 (2020), in which the Supreme Judicial Court notes that "this body of law is difficult to understand even for experienced attorneys, and ... the complexity and opacity of the process can, and sometimes does, result in catastrophic consequences for homeowners." Id. at 450.
[3] The parties' have filed their stipulated facts three times. They appear on the docket as document ##s 12, 21.2, & 23.2.
                                                            -2-
 
municipality's collector executes a tax taking by preparing a notice, which is to be published in a local newspaper and publicly posted or which may be personally served. See id.; G.L. c. 60, §§ 40 & 53. Then, "[a]t the designated time and place, the collector announces that he or she is taking the property for the municipality." Tallage Lincoln, LLC, 485 Mass. at 462; G.L. c. 60, § 53.
            There are two main effects of a tax taking: (1) under G.L. c. 60, § 53, "the municipality takes tax title to the property, and the delinquent taxpayer is left with only a right of redemption; and (2) under G.L. c. 60, § 62, "the already substantial fourteen percent annual interest rate on overdue taxes increases to a sixteen percent annual interest rate." Tallage Lincoln, LLC, 485 Mass. at 462-463. "After the taking, the collector must record an instrument of taking within sixty days." Tallage Lincoln, LLC, 485 Mass. at 463; G.L. c. 60, § 54.
            On March 31, 2017, the Collector-Treasurer for the City of Springfield executed an "Instrument of Taking" pursuant to G.L. c. 60, §§ 53 & 54. The total amount of the tax lien was $2,007.10, which included the unpaid 2016 property taxes plus 14% interest and additional charges.
            "If nobody redeems the property within six months after the taking ... , the municipal treasurer ... may begin proceedings to foreclose the delinquent taxpayer's right of redemption by filing a petition in the Land Court." Tallage
 
                                                            -3-
 
Lincoln, LLC, 485 Mass. at 467; G.L. c. 60, § 65.
            On January 31, 2019, the tax debt not having been paid, Springfield filed a tax lien foreclosure action in the Land Court seeking to foreclose Ms. Mills' right to redeem the home, Land Court action# 19 TL 000102 (the "Tax Foreclosure Action"). "If the taxpayer answers and appears, the Land Court provides the taxpayer with an explanation of his or her rights." Tallage Lincoln, LLC, 485 Mass. at 468.  "The municipality ...  then files a request for a finding by the Land Court regarding the amount of money that the taxpayer must pay in order to redeem the property." Id.; G.L. c. 60, § 68. "The Land Court also sets a time for redemption." Tallage Lincoln, LLC, 485 Mass. at 468.
            On August 13, 2019, Springfield filed a Notice of Payment Agreement and, thereafter, several payments, amounting to thousands of dollars, were made. On May 11, 2022, Springfield requested that the Land Court restart the Tax Foreclosure Action and then filed a second Notice of Payment Agreement on May 12, 2022. On August 12, 2022, Springfield requested that the Land Court again restart the Tax Foreclosure Action because Ms. Mills had allegedly defaulted on the payment agreement and, on November 21, 2022, Ms. Mills filed an answer in which she claimed the right to redeem the title to the home. On January 26, 2023, the Land Court made a finding that, to redeem her home, Ms. Mills would have to
 
                                                            -4-
 
pay a total of $17,582.43 on or before May 8, 2023, with additional interest accruing on the tax debt at 16% until time of payment.
            On May 30, 2023, Springfield filed a Motion for Judgment of Foreclosure seeking to foreclose Ms. Mills' right of redemption on the ground that the time period set in the Land Court's January 23, 2023 finding had expired. [4] "If the taxpayer ... fails to redeem the property according to the terms fixed by the Land Court, and the Court enters judgment to foreclose the right of redemption, the municipality ... takes absolute title to the property." Tallage Lincoln, LLC, 485 Mass. at 468; G.L. c. 60, § 69. "[T]he foreclosure judgment extinguishes the taxpayer's remaining interest in the property -the right of redemption - and converts the municipality's ... tax title into absolute title." Tallage Lincoln, LLC, 485 Mass. at 469; G.L. c 60, § 64. "Consequently, following the foreclosure, the municipality ... owns the property outright, and the taxpayer loses any equity that he or she had in the property, no matter how small the amount of taxes owed." Tallage Lincoln, LLC, 485 Mass. at 469.
            On October 11, 2023, Ms. Mills filed this action before the Single Justice in the Supreme Judicial Court seeking (1) declarations, including that "the practice of
 
--------------------------------------------
 
[4] Although the parties' stipulated facts state that Springfield filed the Motion for Judgment of Foreclosure on May 23, 2023, see Stipulated Facts, 19, the Land Court docket and motion indicate that the motion was filed on March 30, 2023. The motion states that it concerns a request for "Judgment of foreclosure (after finding has expired)."
 
                                                            -5-
 
retaining owners' surplus equity when real property is taken pursuant to M.G.L. c. 60 to satisfy debts to municipalities violates the Takings Clause" of art. 10 of the Massachusetts Declaration of Rights and of the Fifth Amendment to the United States Constitution (Counts I, II, & IV);[5] and (2) an order permanently enjoining Springfield "from taking Ms. Mills' Home in a tax foreclosure proceeding unless and until provision is made for paying to her, within a reasonable period of time after the taking, the difference between the fair market value of her Home and the amount owed to [Springfield] in taxes, interest, fees and costs." [6]
            On March 18, 2024, Springfield filed a motion in the Tax Foreclosure Action requesting to withdraw without prejudice Springfield's motion for judgment. The motion to withdraw was allowed on March 19, 2024.[7] The parties agree that foreclosure will result in the transfer of absolute title in the property to Springfield and Ms. Mills will be divested of any interest in the home, including
 
--------------------------------------------
 
[5] Count III of the complaint seeks a declaration that "Springfield's imminent seizure of all the equity in [the home] under Chapter 60 ... will violate the equal taxation guarantee in Part I, Article  10 of the Massachusetts  Declaration of Rights." At oral argument, counsel for the plaintiff informed the Court that Ms. Mills seeks this declaration - concerning the equal taxation guarantee of art. I 0-in the alternative. Given the Court's disposition of Ms. Mills' request for a declaration concerning the takings clause of the Fifth Amendment and art. I 0, the Court does not reach Ms. Mills' equal taxation guarantee request for a declaration.
[6]  The complaint also prays for a preliminary  injunction  enjoining (a) Springfield  from "foreclosing Ms. Mills' equity of redemption" or, in the alternative, (b) enjoining Springfield "from taking Ms. Mills' Home in a tax foreclosure proceeding without provision being made to turn over to her, within a reasonable period after the taking, the difference between the fair market value of her Home and the amount owed to the City of Springfield in taxes, interest, fees and costs" or, in the alternative (c) enjoining "all use of G.L. c. 60 to take property for public use for a period of ninety (90) days  to allow the Massachusetts General Court to amend Chapter 60 " The plaintiff  filed a Motion for Preliminary Injunctive Relief on October 11, 2023.
[7] The parties informed the Court of the motion to withdraw at oral argument on March 19, 2024. The motion to withdraw and its allowance appear on the docket in the Tax Foreclosure Action.
 
                                                            -6-
 
any equity more than the tax· lien amount. Springfield's 2022 tax assessment of the value of the home was $145,000 and the fair market value of the home is likely in excess of this amount. The amount owed to Springfield for back taxes as of December 20, 2023, the date of the filing of the parties' stipulated facts, was approximately $22,000, and an additional $4.64 accrues daily.
STANDARD  OF REVIEW
            Although the defendants' motion is labeled as a motion for judgment on the pleadings, the Court will treat it as a motion for summary judgment, because the parties have submitted stipulated facts. See Mass. R. Civ. P. 12 (c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").[8]
            Summary judgment will be granted when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Global NAPs, Inc. v. Awiszus, 457 Mass. 489,499 n.16 (2010), quoting Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 358 (1997). Here the parties have jointly submitted stipulated facts and have agreed that (1) there are no material disputed facts; and
 
--------------------------------------------
 
[8] The defendants do not object to treatment and disposition of their motion as one for summary judgment.
 
                                                            -7-
 
(2) no additional facts need be established. The issue for the Court is, therefore, whether either party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56 (c) ("The judgment sought shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law").
ANALYSIS
            Ms. Mills argues that where, as here, the value of a delinquent taxpayer's property exceeds the amount owed in taxes, interest, and fees, tax foreclosures under c. 60 effect a taking without just compensation in violation of the Fifth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights.[9] See Tyler v. Hennepin County, Minnesota, 598 U.S. 631, 639 (2023). The parties agree that Tyler v. Hennepin County, Minnesota holds that where the value of a delinquent taxpayer's property exceeds the amount owed in taxes, interest, and fees, a statutory scheme that does not provide a procedure for the delinquent taxpayer to claim and receive the amount exceeding the amount
 
--------------------------------------------
 
[9] "Both the takings clause of the Fifth Amendment to the United States Constitution and art. IO of the Massachusetts Declaration of Rights  'prohibit  the  taking  of  private  property  for  public  use  without  just  or  reasonable compensation." FBT Everett Realty, LLC v. Massachusetts Gaming Commission, 489 Mass. 702,  709  n.4 (2022), quoting Fitchburg Gas & Elec. light  Co v.  Department  of  Pub.  Utils., 467  Mass. 768, 775 (2014).  "To  date,  we have interpreted art. IO consistently to  provide property  owners the same  protection  afforded  under  the just compensation clause of the Fifth Amendment." Id., quoting Blair v. Department of Conservation & Recreation , 457 Mass. 634,642 (2010). Accordingly, when this Court refers to the requirements of the takings clause of the Fifth Amendment, it also necessarily refers to requirements of the takings clause of art. 10.
 
                                                            -8-
 
owed violates the Fifth Amendment. [10] See Tyler, 598 U.S. at 644-645. Cf. Nelson v. New York, 352 U.S. 103, 109 (1956) (holding that "City's retention of property, in one instance, and proceeds of sale in the other, far exceeding in value the amounts due" did not violate takings clause of Fifth Amendment where procedure existed for homeowner to obtain surplus).
            The defendants contend, however, that G.L. c. 79, §§ 10 & 14, provide just such a procedure and that, therefore, the tax foreclosure process under G.L. c. 60 does not violate the takings clause. The defendants also argue that this suit is barred in this Court by Mass. R. Civ. P. 13 (a) and Mass. R. Civ. P. 12 (b) (9) and is not ripe for decision under G.L. c. 23 l A.[11] The Court will address the defendants' procedural arguments first.
            A. Mass. R. Civ. P. 13 (a)
            The defendants argue that Ms. Mills' claims in this action are compulsory counterclaims in the Tax Foreclosure Action and cannot be brought in this action. See Mass. R. Civ. P. 13 (a). Rule 13 (a) requires that:
 
--------------------------------------------
 
[10] The defendants assert, however,  that there  is no taking  of the value of the  home  in  excess of the amount  owed  to the municipality until the  municipality  sells  the  property.  The  Court  does  not  agree.  When  a  municipality forecloses under G.L. c. 60, § 69, it takes absolute title to the home from  the  delinquent  taxpayer  and "the taxpayer loses any equity that he or she had in the property." Tallage Lincoln, LLC, 485 Mass. at 469.  The  taking of  the taxpayer's surplus equity occurs at the time of the foreclosure. See Knick v. Township of Scott, Pennsylvania, 588 U.S. 180, I 89(2019) ("a property owner has a claim for violation of the Takings Clause as soon as a government takes his property for public use without paying for it").
[11] The defendants also suggest that the Court transfer this case to the Land Court in the interest of judicial efficiency. This suggestion appears to be in conflict with the Supreme Judicial Court's transfer of the case to this Court, not the Land Court, for entry and disposition.
 
                                                            --
 
" [a] pleading shall state as a counterclaim any claim for relief the Court has the power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . ."
Mass. R. Civ. P. 13 (a). Ms. Mills claims are not compulsory counterclaims in the Tax Foreclosure Action because this action does not arise out of the transaction or occurrence that is the subject of the Tax Foreclosure Action.[12]
            "For purposes of determining whether a counterclaim is compulsory or permissive, the word 'transaction' 'should not be construed narrowly or technically, but should be construed in a sense to effectuate the settlement in one proceeding of controversies so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense to the parties and to the public, and to expedite the adjudication of suits."' National Lumber Co. v. Canton Inst. For Sav., Bank of Canton, 56 Mass. App. Ct. 186, 188 (2002), quoting Volpe Constr. Co. v. Trustees of Tufts College, 1 Mass. App. Ct. 38, 40 (1973), quoting Potier v. A.W. Perry, Inc., 286 Mass. 602, 608 (1934).[13] "A familiar test may be applied by inquiring whether the same evidence
 
--------------------------------------------
 
[12] The defendants take the position that, when Ms. Mills filed her answer in the Tax Foreclosure Action, her constitutional claims existed. This position is inconsistent with the defendants' contention that Ms. Mills' constitutional claims are not ripe for adjudication under G.L. c. 231 A.
[13]  As noted in National Lumber Co., both Volpe and Potier considered the term "transaction" in the context of former Superior  Court  rule  32.    "Approximately  the  same  meaning  should   be  assigned   to  the  phrase  'transaction or
 
                                                            -10-
 
will support or refute the opposing claims." Mass. R. Civ. P. 13 Reporter's Notes-1973, quoting Williams v. Robinson, l F.R.D. 211,213 (D.D.C. 1940).
            The issues presented in this case, and, therefore, the evidence needed to determine the issues, are different from those presented in the Tax Foreclosure Action. The issues to be decided in the Tax Foreclosure Action concern the terms of redemption and whether the time for redemption set by the Land Court has passed. See G.L. c. 60, §§ 68 & 69.[14] In this case, the Court must determine whether the tax foreclosure statutory scheme is unconstitutional where, as here, the value of a delinquent taxpayer's property exceeds the amount owed in taxes, interest, and fees. This case and the Tax Foreclosure Action do not arise from the same transaction or occurrence.
            B. Mass. R. Civ. P. 12 (b) (9) Is Inapplicable.
            The defendants also move to dismiss the complaint under Rule 12 (b) (9). "Rule 12 (b) (9) provides for the dismissal of a second action in which the parties and the issues are the same as those in a prior action still pending."  MJ Flaherty v. United States Fidelity & Guar. Co., 61 Mass. App. Ct. 337,339 (2004). As discussed supra, the issues presented in this case are not present in the Tax
 
--------------------------------------------
 
occurrence,' as it appears in Rule I 3(a)." National lumber Co., 56 Mass. App. Ct. at 188 n. 4, quoting Mass. R. Civ. P. 13 Reporter's Notes-1973.
[14] With regard to§ 69, the only issue raised by Springfield's May 30, 2023 Motion for Judgment of Foreclosure was whether the time for redemption, as set by the Land Court, had expired. See footnote 4, supra.
 
                                                            -11-
 
Foreclosure Action. "The Superior Court action thus is different in nature, raises distinct claims, and seeks distinct remedies from those involved in the [tax lien] proceeding[]." Thaddeus v. Secretary of Executive Office of Health and Human Services, 101 Mass. App. Ct. 413,419 (2022) (denial of defendants' rule 12 (b) (9) motion not error in action seeking ruling on statutory and constitutional validity of restriction of in-person visitation by the Department of Children and Families where plaintiffs sought reinstatement of in-person visitation in existing care and protection proceedings).
            C. Ms. Mills' Claims Are Ripe for Adjudication.
            The defendants argue that Ms. Mills is not entitled to a declaration under G.L. c. 23lA because there has as yet been no taking and there may never be.[15] "[T]he superior court ...       may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen ... " (emphasis added). G.L. c. 231A, § 1. "An
 
--------------------------------------------
 
[15] The defendants' additional ripeness arguments are easily disposed of. They argue (I) that G.L. c. 79 provides a remedy for the threatened deprivation of the plaintiff's property  under G.L. c. 60 and that the plaintiff  must attempt to obtain this remedy prior to bringing an action under G.L. c. 231 A; and (2) relying on Jacoby v. Babcock Artificial Kidney Ctr., Inc., 364 Mass . 561, 563 (1974), that there is a presumption against the availability of a separate declaratory judgment action where there is a case already  pending.  First, as explained, infra, the Court concludes that G.L. c. 79 does not provide a remedy. As there is no remedy to exhaust, the plaintiffs failure to exhaust that remedy cannot foreclose her G. L. c. 231 A claim. Second, in Jacoby, the plaintiff sought a declaratory judgment concerning a controversy-"the alleged obligation of the plaintiffs  to  pay  for treatment  received"-that was  the subject of an already pending suit.  Jacoby, 364 Mass. at 563. In  this case, as discussed  supra, the subjects of the Tax Foreclosure Action and this action are not the same.
 
                                                            -12-
 
actual controversy can exist whether or not the plaintiffs rights have already been impaired." District Attorney for Suffolk Dist. v. Watson, 381 Mass. 648, 659 (1980) (holding that actual controversy existed where "the plaintiff assert[ed] and the defendants den[ied] that [the death penalty statute] [was] consistent with art. 26 of the Declaration of Rights"). See also School Committee of Cambridge v. Superintendent of Schools of Cambridge, 320 Mass. 516,518 (1946) ("An 'actual controversy,' as those words are employed inc. 23 IA, is not limited to instances where the rights of one party have been impaired or damaged by the act of another").
            When a person seeks declaratory judgment concerning a statute, she "must demonstrate  a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Kligler v. Attorney General, 491 Mass. 38, 47 (2022), quoting Babbitt v. United Farm Workers Nat'! Union, 442 U.S. 289, 298 (1979).  Ms. Mills has done so in this case.  The law is clear that, if Ms. Mills'  right of redemption is foreclosed, she will lose her entire interest in the home, including the value of the home exceeding the amount due to Springfield. See Tallage Lincoln, LLC, 485 Mass. at 469; G.L. c. 69, § 64. It is also clear that Ms. Mills faces a "true threat" of foreclosure by Springfield. See Kligler, 491 Mass. at 48 (actual controversy existed where doctor who wanted to assist patients to
 
                                                            -13-
 
commit suicide faced "true threat of prosecution" under current law on manslaughter). Springfield has already filed a Motion for Judgment of Foreclosure. The fact that it withdrew the motion without prejudice does not change the analysis. There is, at this point, nothing stopping Springfield from bringing another such motion and Springfield has not indicated any intention of abandoning the Tax Foreclosure Action. See Benefit v. City of Cambridge, 424 Mass. 918,922 (1997) (real dispute existed and plaintiff had standing to bring declaratory judgment action challenging constitutionality of statute where plaintiff had previously been arrested pursuant to statute and district attorney did not indicate that he would refrain from enforcing statute against plaintiff).[16]
D. Constitutionality of Tax Lien Statutory Scheme Under Takings Clause of Fifth Amendment and Art. 10.
            "The Takings Clause [of the Fifth Amendment], applicable to the States through the Fourteenth Amendment, provides that 'private property [shall not] be taken for public use, without just compensation." Tyler, 598 U.S. at 637, quoting Fifth Amendment to the United States Constitution.          In Tyler, the Supreme Court held that a Minnesota tax foreclosure statutory scheme violated the takings clause
 
--------------------------------------------
 
[16] The defendants' reliance on Knick is m is placed. In Knick, the Supreme Court held that a landowner claiming violation of the Fifth Amendment takings clause due to a taking of property without just compensation may bring a § 1983 claim as soon as there has been a taking, regardless of whether there is a state law process for obtaining compensation after the taking . Knick, 588 U.S. at 189. Knick does not involve a claim for declaratory judgment under state law and does no hold that a landowner may not seek a declaration that a threatened government action will violate the Fifth Amendment.
 
                                                            -14-
 
of the Fifth Amendment because it allowed the municipality to seize the plaintiffs home, sell it, and retain the entire proceeds from the sale, including the amount in excess of the homeowner's debt to the municipality.  Tyler, 598  U.S. at  635,  639. In doing so, the Supreme Court distinguished Nelson, in which the Supreme Court held that the retention of the surplus equity in a property by the City of New York above the amount of taxes owed did not violate the takings clause of the Fifth Amendment because, "[u]nlike in Nelson, Minnesota's scheme provides no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the State, any excess value always  remains  with the State."  Tyler, 598 U.S. at 644.
            The parties and this Court agree that Tyler stands for the proposition that a tax foreclosure statutory scheme that does not provide a procedure whereby a landowner may recover the value of the property in excess of the amount owed violates the takings clause of the Fifth Amendment.
            The defendants contend that the Massachusetts tax foreclosure statutory scheme does not violate the takings clause of the Fifth Amendment because G.L. c. 79, §§ 10 & 14, provide a procedure whereby an owner may recover her surplus equity after foreclosure. The Court disagrees. General Laws c. 79, § 10 (entitled, "Damages for injuries to property caused by acts in pais"), states, in pertinent part:
 
                                                            -15-
 
"When the real estate of any person has  been  taken  for  the public use or has been  damaged  by the construction, maintenance, operation, alteration, repc1,ir or discontinuance of a public improvement or has been entered  for  a  public  purpose, but such taking, entry or damage was not effected by or in accordance with  a formal  vote or order of the  board  of officers of a body politic or corporate duly  authorized  by  law, or when the personal property of any person has been damaged, seized, destroyed or used for a public purpose, and by such taking, damage, entry, seizure, destruction or use he has suffered  an injury for which he is entitled to compensation, the damages therefor may be recovered under this chapter (emphasis added). G.L. c. 79, § 10.[17]
            The defendants argue that the retention of an owner's surplus value over the amount owed to a municipality is a taking in pais and qualifies as a "seizure" of "personal property" within the meaning of G.L. c. 79, § 10.  The Court disagrees. A taking in pais is a taking "with no formal act other than the physical appropriation of the property." Triangle Ctr., Inc. v. Dep't of Pub. Works, 386 Mass. 858,861 (1982). The taking of absolute title to a taxpayer's property occurs only after the bringing of a Land Court action by the municipality and foreclosure of the right of redemption by that court. See G.L. c. 60, §§ 65 & 69. A tax lien forfeiture is not, therefore, a taking in pais.
            Further, § 10 does not provide a procedure whereby a taxpayer can recover her surplus equity because§ 10 does not create a right to compensation and G.L. c.
--------------------------------------------
 
[17] General Laws c. 79, § 14 , provides that "[a] person entitled to an award of his damages under this chapter . . . may petition  for the assessment of such damages to the superior court...”
 
                                                            -16-
 
60 provides none. See Davidson v. Com., 8 Mass. App. Ct. 541, 546 n.5 (1979) (Section 10 "provides a remedy where there has been a taking or an injury for which the property owner is entitled to compensation, but that section does not of its own force create substantive rights"). A person's "right to compensation" comes from the statute authorizing the injury. See Sullivan v. Com., 335 Mass. 619,624 (1957).
 
            In Sullivan, after determining, by reference to its legislative history, that G.L. c. 79, § 9, "does not in itself create a liability for damages, but leaves that to the statute authorizing the particular injury[,]" the Supreme Judicial Court noted with respect to § 10 that "there is no more reason than in the case of§ 9 to construe that the section  itself gives a right to recover damages."  Sullivan, 335 Mass. at 624. The Supreme Judicial Court has made clear that although G.L. c. 60, §§ 69 and 64, authorize the retention of a taxpayer's surplus equity, they do not give a right to recover damages. See Kelly v. Boston, 348 Mass. 385, 388 (1965) ("We think it is clear ...that the Legislature intended the surplus from a sale of land taken for nonpayment of taxes, on which the right of redemption has been foreclosed in the Land Court, to belong to the municipality"); Tallage Lincoln, LLC, 485 Mass. at 469.
            In Kelly, a taxpayer whose property was taken by tax lien foreclosure sought
 
                                                            -17-
 
a declaration that he "should receive from the collector the surplus remaining over and above taxes, interest, costs, and other assessments committed to the collector." Kelly, 348 Mass. at 386. The Supreme Judicial Court, after examination of the history of tax lien foreclosure in Massachusetts,[18] concluded that G.L. c. 60 did not provide statutory authority for the return to the taxpayer of his surplus equity and ordered a final decree to enter "declaring that the plaintiff is entitled to none of the so called surplus." Id. at 389. Because G.L. c. 79, § 10, does not apply to a taking through formal proceedings and c. 60 does not create liability for damages from a municipality's retention of a taxpayer's surplus equity, the Court concludes that the taxpayer is not "entitled to compensation" within the meaning of G.L. c. 79, § 10. Section 10 does not, therefore, provide a procedure whereby an owner may recover her surplus equity after foreclosure. [19]
            Because G.L. c. 60 does not provide a procedure whereby a delinquent landowner may recover the value of his or her land above the amount 9wed, the retention of owners' surplus equity when real property is taken pursuant to G.L. c. 60 to satisfy debts to municipalities violates the takings clause of art. 10 of the
 
--------------------------------------------
 
[18] Prior to 1915, the surplus from the sale of unredeemed land taken by municipalities was to be paid to the prior owner. See Kelly, 348 Mass. at 387-388. In I 915, the Legislature enacted the current system whereby, after foreclosure of the right of redemption, the land was to be held and disposed  of like any  land  belonging  to the municipality. Id. at 388.
[19] Given the allowance of Ms. Mills' motion for summary judgment, the Court need not address the defendants' contention that Lonergan should be dismissed from this action because of qualified immunity.
 
                                                            -18-
 
Massachusetts Declaration of Rights and the Fifth Amendment to the United States Constitution. The statutory scheme is not facially unconstitutional because, of course, there are circumstances where the tax debt (including interest) exceeds or equals the value of the property. It is, however, unconstitutional as applied in circumstances, such as here, where the tax debt is less than the value of the property. The statutory scheme, in its present form, is untenable and requires Legislative correction.
ORDER
            Accordingly, the parties are ORDERED to file with this Court respective proposed forms of Judgment in conformity with this Decision on or before April 26, 2024.